**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AARON LUSTER, )
                Petitioner, )
)
vs. )    Civil Action No. 14-936
)    Chief Magistrate Judge Maureen P. Kelly
COMMONWEALTH OF )
PENNSYLVANIA; ATTORNEY )
GENERAL OF THE STATE OF )
PENNSYLVANIA, )
                Respondents. )

## OPINION

Aaron Luster ("Petitioner") was convicted of third degree murder of his seven month pregnant girlfriend and third degree murder of their unborn child in connection with an incident where he left the girlfriend on the side of a highway road, in a compromised condition, after assaulting her. Thereafter, a passenger car struck and killed the girlfriend and the unborn baby was also killed.

Petitioner raises twelve Grounds for Relief in the instant Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"). Because none of the Grounds merits the grant of federal habeas relief, the Petition will be denied. Because jurists of reason would not find denial of the Petition debatable, a Certificate of Appealability will also be denied.

## I. FACTUAL HISTORY

The Pennsylvania Superior Court, sitting en banc, summarized the evidence presented in this case as follows in its July 23, 2013 Majority Opinion:

On January 28, 2003, at approximately 2:30 a.m., the corpse of Christine Karcher, ("victim"), was discovered by police on Route 60 in the Moon Township/Coraopolis area of Allegheny County. At that time, the victim was approximately seven months pregnant. She was romantically involved with Appellant, but lived with Chester Bell. Bell had been the victim's boyfriend for ten years. She had informed Bell that Appellant was the father of her unborn child.

On January 27, 2003, at approximately 9:00 p.m., Bell had a drink with the victim at a Coraopolis bar known as the Black Stones. The victim was a drug user and a heavy drinker. The victim left the bar stating that she was going to play cards with some friends. About one hour later, Bell went home and fell asleep. At approximately 3:30 a.m. on January 28, 2003, Bell awoke and discovered that the door to his residence was open, and that his Dodge Dynasty, cell phone, and a red Toyota Camry belonging to his employer were missing. Bell assumed that the victim had borrowed the missing items and went back to sleep. When he awoke the following morning, the items were still missing. Bell was unable to reach the victim on the cell phone. Bell contacted his employer, and the red Toyota Camry was reported as stolen. Later that day, Bell learned that the police wanted to speak with him in connection with the victim's death.

At approximately 10:30 p.m., on January 27, 2003, Eric Branaugh, the victim's friend, was walking home after work when he encountered the victim driving the Dodge Dynasty. The victim appeared drunk, nervous, and afraid. The victim explained to Branaugh that she and Appellant had argued, and that she feared Appellant was planning to harm her. Although Branaugh refused the victim's request to accompany her to a bar, he gave her his telephone number and told her that she could call him.

Between 10:00 p.m. and 11:00 p.m. on January 27, 2003, Michael Smith arrived at Chez Lounge, a bar near the Black Stones. Smith knew the victim and Appellant. Smith saw the victim drinking at Chez Lounge. Sometime before 1:00 a.m. on January 28, 2003, Smith accompanied the victim to a nearby bar named Wayne's Lounge, and then back to Chez Lounge. During their return drive to Chez Lounge, the victim's cell phone "kept ringing," but she "kept … turning it off." N.T., 3/15-19/04, at 109. Smith and the victim encountered Appellant when they arrived at the parking lot of Chez Lounge between 1:00 a.m. and 2:00 a.m. on January 28, 2003. Appellant appeared to be angry with Smith and the victim. Appellant approached Smith with clenched fists and accused Smith of having sex with the victim. Smith explained to Appellant that they were merely friends. Appellant then said to the victim, "[G]et the f___ out of the car, now, you bitch." *Id*. at 111. Smith described Appellant as "real angry" and reported that Appellant also said "get the F out of the car, are you F'ing my girlfriend, what the hell, I've been calling you, what the F." *Id*. at 112. Smith entered the bar after being assured by the victim that she was "okay." *Id*. at 111. Smith exited the bar approximately five minutes later and noted that Appellant and the victim had left.

2

Smith observed that the Dodge Dynasty that the victim had been driving was in the parking lot, while the red Toyota Camry that Appellant had been driving was gone.

Following her departure with Appellant, the victim made several calls to 911 with Bell's cell phone. The conversations with the 911 operator began at 1:52 a.m. on January 28, 2003. During the 911 calls, the victim was either moaning and crying, or desperately pleading for help while a male voice was heard in the background. The recordings of those 911 calls were played for the jury and they lasted twelve to fifteen minutes. Bell listened to the 911 calls and identified the male voice as belonging to Appellant. *Id*. at 377. On January 28, 2003 at 2:09 a.m., state police in the area of Route 60 were advised "to be on the lookout for a red Toyota Camry with a female possibly being assaulted on the interstate." *Id*. at 190.

The victim also telephoned Branaugh. In that telephone conversation, the victim told Branaugh that Appellant was trying to kill her. Branaugh overheard Appellant in the background threatening to kill the victim. Branaugh was unable to ascertain where the victim was calling from and he did not obtain help for her.

At approximately 2:15 a.m. on January 28, 2003, the victim was lying prone on Route 60 when she was struck by a vehicle driven by James Caleffi. Caleffi had a few beers prior to the incident and thought that he had hit a deer or other object. He stopped his vehicle in a hotel parking lot nearby. Caleffi phoned 911 to report that there was an obstruction on the road. Police discovered the victim's corpse on Route 60 at approximately 2:30 a.m. Most of the victim's brain was on the road next to her body. Her unborn child had died as well. A police accident reconstructionist was immediately dispatched to the scene, and his subsequent investigation included a review of the accident scene, Caleffi's car, and the red Toyota Camry. He concluded that Caleffi ran over the victim's head while she was lying on the road.

Sometime in the early morning hours of January 28, 2003, Appellant gave the red Toyota Camry to James Dixon in exchange for crack cocaine. During the same time frame, Appellant used Bell's cell phone to call his wife, Cherryl Ann Luster ("Wife"). Appellant asked his wife, "will you love me no matter what I did[?]" *Id*. at 132. Wife answered affirmatively, but Appellant refused to tell her what he had done. Later in the day on January 28, 2003, Wife saw Appellant at his mother's home. Wife testified that she observed Appellant kneeling over a bed with his hands on his face. Appellant would not respond to Wife's inquiries about why he appeared upset. Police then arrived at the residence.

Appellant gave two statements to police. On January 28, 2003, at approximately 5:00 p.m, State Trooper Kevin S. Scott went to Appellant's home. Appellant agreed to accompany Trooper Scott to the police station. Trooper Scott testified that during the trip, Appellant asked Trooper Scott whether the investigation was "about the girl that got hit on 60 last night." *Id*. at 399. Trooper Scott responded affirmatively and said that police were attempting to ascertain a timeline of the victim's whereabouts the previous night.

Trooper Scott further testified that Appellant stated he had been "partying in Coraopolis" with the victim, that they had gone to Bell's home "to get some money for crack," and that the victim had left Appellant at Bell's home. *Id.*

Appellant reported to Trooper Scott that following the victim's departure, Appellant took the keys to the red Toyota Camry and Bell's cell phone and began looking for her. *Id*. at 399-400. Appellant told Trooper Scott that Appellant found the victim with another man. *Id*. at 400. Trooper Scott testified that Appellant explained that "there was an argument" and Appellant "put [the victim] into the Camry and said we're going to go to Carnegie [where Appellant and the victim had an apartment together] to try to work things out." *Id*. Appellant explained to Trooper Scott that the "fighting intensified" while they were on the way to Carnegie. *Id*. According to Trooper Scott, Appellant "said that [the victim] didn't want to go to Carnegie so he was going to put her out of the car." *Id*. Trooper Scott stated that Appellant's exact words were that he planned to "put her out of the car." *Id*. Appellant relayed that at that point, Appellant and the victim observed a police car and "the fighting relaxed," but as soon as they "passed the police car, the fighting got more intense." *Id*. at 400-401. Appellant "said that is when he put her out of the car. Slammed the gear shift into park and put her out of the car." *Id*. Appellant offered to show Trooper Scott "where he put her out of the car." *Id*. at 401. "After [Appellant] told [Trooper Scott] that he put her out of the car four times, then he showed [Trooper Scott] where it occurred." *Id*. at 401. Appellant showed Trooper Scott that Appellant removed the victim from the Camry at the point where the victim's body was found. *Id*. Appellant concluded his conversation with Trooper Scott by relating that after he removed the victim from the car, he went to another section of Pittsburgh to purchase crack cocaine. *Id*. at 401-402.

State Trooper Pierre Wilson testified that Appellant agreed to speak with police once Appellant arrived at the police station. A tape recording of this interview was played for the jury at trial. *Id*. at 379. That interview was not placed in the trial transcript, but trial counsel's closing arguments indicate that Appellant told police that Appellant and the victim were arguing while they were traveling along Route 60 in the red Toyota Camry. *Id*. at 455. According to Appellant, the victim "threw the car into park," propelling Appellant and the victim "forward." *Id*. at 455. The victim "banged her face into [the] dashboard." *Id*. Appellant reported that the victim then left the car of her own accord and ran away. *Id*. at 453.

In the course of their investigation, police found the victim's blood on Appellant's clothing and on three different locations inside the red Toyota Camry. A hair matching the victim's DNA was discovered wrapped around a bar located on the rear passenger side of the undercarriage of the Toyota.

Dr. Leon Rozin, chief forensic pathologist with the Allegheny County Coroner's Office, autopsied the victim's body. Dr. Rozin testified that the victim was severely intoxicated and had a blood alcohol content of .35%. *Id*. at 329. According to Dr. Rozin, the victim had cocaine metabolites in her urine. *Id*. The unborn child was normally developed and died from cessation of blood flow due to the victim's death. *Id*. at 331. The majority of the trauma was located on the victim's head and the upper portion of her chest, while the abdomen and baby were intact. The victim's head had been squeezed between a tire and the surface of the road such that her skull was totally disfigured and the brain was located on the

road. Dr. Rozin concluded that the skull disfigurement was consistent with the victim lying on the ground and having been run over by "at least one tire of a motor vehicle." *Id*. at 333. Her right shoulder also sustained a "huge laceration." *Id*. at 334. As to her upper torso, her ribs were fractured and her heart had been crushed. Both of the victim's bones in her right forearm were fractured. *Id*. at 340. Several bruises and abrasions were found on the victim's chest and abdominal areas, and two bruises were located on the inner surface of her right arm. The victim's hands and left arm were bruised and she had a strangulation injury around her neck. None of these injuries were inflicted by a car, but rather, were the result of a manual assault. *Id*. at 337-39, 343. Dr. Rozin concluded that the victim died from being run over by a car while lying on the highway, and that the manually-inflicted injuries, coupled with the level of intoxication, would have "compromised" the victim. *Id*. at 353. Dr. Rozin stated that the victim would not have been "incapacitated" by the manual trauma. *Id*.

Pa. Superior Court slip op., ECF No. 12-10 at 1 – 9.

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

The Superior Court summarized the state court procedural history as follows:

Appellant was charged with the aforementioned murder crimes. On March 19, 2004, following a weeklong trial, a jury found Appellant guilty of third degree murder in both the death of the victim and her unborn child. Two months later, Appellant was sentenced to two consecutive terms of imprisonment of seven to 14 years, for an aggregate term of imprisonment of 14 to 28 years. Appellant filed a timely direct appeal challenging the sufficiency of the evidence, the trial court's jury instructions on causation and the trial court's ruling which permitted the Commonwealth to play the 911 tape recording to the jury. On April 17, 2006, this Court affirmed the judgment of sentence. ***Commonwealth v. Luster***, 902 A.2d 979 (Pa. Super. 2006) (unpublished memorandum). On February 27, 2007, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Luster,*** 917 A.2d 313 (Pa. 2007). Appellant filed a timely *pro se* PCRA petition on July 5, 2007. Counsel was appointed, but on Feburary [sic] 11, 2008, counsel filed a petition to withdraw his appearance, and a no-merit letter pursuant to ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988). Two days later, the PCRA court granted counsel's petition to withdraw. On April 4, 2008, the trial court denied Appellant's PCRA petition without holding an evidentiary hearing. Appellant filed a *pro se* appeal to this Court. On September 21, 2009, a panel of this Court concluded that at least seven of the issues raised by Appellant in his PCRA petition were, potentially, of arguable merit. Thus, we reversed the order of the PCRA court and remanded the case "with directions for the trial court to reinstate [Appellant's] PCRA petition, and appoint new counsel to assist him in

his pursuit of PCRA relief." ***Commonwealth v. Luster***, 986 A.2d 1259 (Pa. Super. 2009) (unpublished memorandum at 31).

> Upon remand, the PCRA court appointed Scott Coffey, Esquire, to represent Appellant. Mr. Coffey filed an amended PCRA petition on March 2, 2010. However, Appellant refused to sign a verification for the petition since he asserted that he wished to raise several more issues in his PCRA petition. Following a brief hearing on October 27, 2010, Mr. Coffey filed a second amended PCRA petition in which he included the additional issues Appellant wished to raise. The PCRA court conducted a hearing on January 11, 2011, at which both trial and direct appeal counsel testified. On February 28, 2011, the PCRA court entered an order, with an accompanying opinion, again dismissing Appellant's petition for PCRA relief. This timely appeal followed.

Pa. Superior Court slip op., ECF No. 12-10 at 9 – 10. A panel of the Superior Court reversed and remanded. ECF No. 12-8 at 11. The Commonwealth petitioned for reargument en banc, which was granted. The Superior Court en banc then affirmed, with one judge concurring in the result and three judges concurring and dissenting. Majority slip op., ECF No. 12-10 at 1 – 45; Concurring and Dissenting slip op., ECF No. 12-11 at 1 - 22. On December 27, 2013, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal. ECF No. 12-11 at 21 - 22.

### B. Federal Court Procedural History

Petitioner filed the instant Petition in this Court, raising the following twelve Grounds for Relief:

> GROUND ONE: Superior Court erred and abused its' [sic] discretion in reversing their decision of a new trial and affirming the trial court order since trial counsel was ineffective for failing to cross-examine Eric Branaugh regarding trial testimony that was inconsistent with the statement that he had given to the police.

ECF No. 1 at 5

> GROUND TWO: Superior Court erred and abused its' [sic] discretion in reversing their decision of a new trial and affirming the trial court order since trial court erred in letting Defendants' [sic] wife testify and Appellate Counsel was ineffective for failing to challenge testimony given by Defendants' [sic] wife on redirect.

Id. at 7.

> GROUND THREE: Superior Court erred and abused its' [sic] discretion in
> affirming the trial court order since trial counsel was ineffective for failing to
> impeach the coroner Dr. Rocin [sic] regarding his contradictory testimony.

Id. at 8.

> GROUND FOUR: Superior Court erred and abused its' [sic] discretion in
> affirming the trial court order since trial counsel and /or Appellate counsel were
> ineffective for failing to raise a wieght [sic] of evidence claim regarding the third
> degree murder convictions in Post Sentencing Motions/Direct Appeal.

Id. at 10.

> GROUND FIVE: Superior Court erred and abused its' [sic] discretion in
> affirming the trial court order since trial counsel was ineffective for failing to
> object to the telephone records introduced into evidence.

ECF No. 1-2 at 15.

> GROUND SIX: The Superior Court erred and abused its' [sic] discretion in
> affirming the trial court order since trial counsel was ineffective for failing to
> object to the hearsay testimony of Commonwealth witness Eric Branaugh.

Id. at 17.

> GROUND SEVEN: The Superior Court erred and abused its' [sic] discretion in
> affirming trial court order since Appellate Counsel was ineffective for failing to
> raise a claim regarding the trial court error in admitting the irrelevant and
> prejudicial testimony of Robert Pennybaker and trial counsel was ineffective for
> failing to include as part of his objection, a claim that the testimony constituted
> Prejudicial [sic] bad acts of the Appellant.

Id. at 19.

> GROUND EIGHT: The Superior Court erred and abused its' [sic] discretion in
> affirming the trial court order since trial counsel was ineffective for failing to
> object to the prosecutions' [sic] closing arguments of facts not in evidence, but
> gave his own biased opinion, totally ignoring the evidence in order to prejudice
> the jury, making it impossible to weigh the evidence in an impartial manner.

Id. at 21.

> GROUND NINE: Superior Court erred and abused its' [sic] discretion in
> affirming the trial court order since trial counsel was ineffective for failing to

retain a forensics expert to counter the Commonwealths' [sic] Advance Theory that Appellant had struck the victim with his car, ran over the victims' [sic] arm and to prove that the skid marks were from the car the Appellant was driving.

Id. at 23.

GROUND TEN: Superior court erred and abused its' [sic] discretion in affirming the trial court order since trial counsel was ineffective when he failed to object to the playing of the 911 tapes since Jasco [sic] was not shown both tapes and never verified which of the two tapes was the original. And, after hearing the tape, that it was contradictory to his earlier testimony.

Id. at 25.

GROUND ELEVEN: Superior Court erred and abused its' [sic] discretion in affirming the judgment of sentence of the trial court. The trial court erred when it permitted the Commonwealth to play a 911 tape to the jury when large parts were inaudible and after listening, stated that it was "Too opaque" for the trial court to understand.

Id. at 27.

GROUND TWELVE: Insufficient evidence to support the guilty verdicts. Superior Court erred and abused its' [sic] discretion when it found that the Petitioners' [sic] act caused the death of the victim and the unborn child.

Id. at 29.

Respondents filed an Answer denying that Petitioner was entitled to any relief. ECF No. 12. Petitioner filed a Motion for Appointment of Counsel, ECF No. 15, which was denied. ECF No. 16. All parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 10 and 14.

## III. AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because

Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

### A. Grounds One, Two, Three, Four, Five, Six, Seven, Eight, Nine and Ten
   - Ineffective Assistance of Counsel Claims.

We turn first to the ten Grounds For Relief based on ineffective assistance of counsel.  In

addressing these claims of  alleged ineffectiveness raised in Grounds One through Ten, the

Pennsylvania Superior Court, in its July 23, 2013 opinion, applied the state court test for

ineffective assistance of counsel, ultimately derived from Commonwealth v. Pierce, 527 A.2d

973 (Pa. 1987) (the "Pierce standard").  See ECF No. 12-10 at 13.  This Pierce standard has been

found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668

(1984).  Werts, 228 F.3d at 203.  The United States Court of Appeals for the Third Circuit has

ruled that this standard is not "contrary to" Strickland in the sense of being a wrong rule of law,

and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of

Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court

decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably

be justified under Strickland." Id. at 204.

Because the state courts decided Petitioner's ten Grounds for Relief based on

ineffectiveness of counsel under the standards of Pierce and those standards are essentially the

same as the Strickland standard, this Court is required to apply the deferential standard of 28

U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's

adjudication of the federal claim resulted in a decision that was contrary to United States

Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding

of Werts, Petitioner is barred from arguing that the decisions of the state courts, applying the

Pierce standard, are contrary to the standard announced in Strickland.  Petitioner could argue the

second sense of "contrary to," i.e., the state courts reached a different result from that of the United States Supreme Court on a set of materially indistinguishable facts.

In the instant case, Petitioner has not carried his burden to show the Superior Court's disposition was contrary to clearly established federal law in the second sense, i.e., that there existed any United States Supreme Court decision on ineffective assistance of counsel, at the time that the Superior Court rendered its decision in this case, that has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the state courts herein. Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Indeed, even assuming that Strickland had a set of facts that are materially indistinguishable from the facts of Petitioner's case, the outcome of Strickland and the outcome in Petitioner's PCRA appeal in the Superior Court were the same, i.e., the criminal defendant was denied relief in both cases. Accordingly, Petitioner has not shown that the Pennsylvania Superior Court's PCRA decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court.

Thus it remains open for Petitioner to show that the decision of the Superior Court was an unreasonable application of federal law. In this case, Petitioner fails to show that the state courts' disposition of his claims was an unreasonable application of United States Supreme Court precedent concerning ineffective assistance of counsel. In Strickland, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient (hereinafter sometimes referred to as "the performance prong"). This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91. In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). In light of the foregoing, the United States Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance (hereinafter sometimes referred to as "the prejudice prong"). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Moreover, because the Superior Court addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Premo v. Moore, 562 U.S. 115, 122-23 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)). Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'").

## 1. Grounds One and Six - Ineffectiveness claims as to Branaugh's testimony.

Petitioner raises two grounds of ineffectiveness with respect to Branaugh's testimony, specifically in Grounds One and Six. We will address these two related grounds together.

### a. Ground One – Failure to cross examine with prior statement.

In Ground One, Petitioner complains that his trial counsel was ineffective for failing to cross examine Eric Branaugh, the victim's friend, regarding his trial testimony that was allegedly inconsistent with a statement that Branaugh had given to police. The Superior Court rejected this

claim of ineffectiveness, finding that counsel was not ineffective for failing to cross examine

Branaugh on the allegedly inconsistent prior statement he had given to the police because under

state evidentiary law, it would not have been proper to permit such impeachment because

Branaugh never adopted or signed or even reviewed the summary made by the police officer.

ECF No. 12-10 at 23.   Essentially, the Superior Court found that trial counsel was not ineffective

for failing to impeach Branaugh with the summary of the Branaugh's statement made by the

police officer which, under controlling state evidentiary law, did not qualify as proper

impeachment evidence.  In other words, counsel could not be deemed ineffective for failing to

attempt that which state law would not have permitted.  Such a decision on the performance

prong, based, as it is, upon state law is binding on this Court.  See, e.g., Priester v. Vaughn, 382

F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state

court determinations on state-law questions.' *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct.

475, 116 L.Ed.2d 385 (1991). This is particularly true in the instant case because the issue of

appropriate jury instructions on accomplice liability in first-degree murder trials has been

squarely addressed by the Pennsylvania Supreme Court. Bound by the state court's determination

that the instruction at issue comported with state law, it is evident that Priester cannot satisfy the

first component of a viable ineffective assistance of counsel claim-that counsel's performance

was deficient.") (some citations omitted);  Carpenter v. Vaughn, 296 F.3d 138, 153 (3d Cir.

2002) ("In the present case, Emmil testified that she and Carpenter had smoked marijuana on the

evening of the killing. She also testified that they had drunk together for about an hour. Trial Tr.,

1/18/84 at 22-24. Likewise, Carpenter and others testified that he had drunk several beers and

smoked some marijuana on the night in question. The Pennsylvania Supreme Court held,

however, that this evidence was insufficient to justify an intoxication instruction. We cannot

review this decision on a question of state law, and this holding dooms Carpenter's ineffective assistance claim, since his attorney cannot have been ineffective for failing to request an instruction that was unavailable."). In effect, the Superior Court's disposition of Ground One is simply an application of the well-known principle that counsel cannot be found ineffective for failing to raise a meritless claim, where the claim of deficient performance is based upon state law. Werts v. Vaughn, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim.").[1]

The pattern of the Superior Court finding that trial counsel was not ineffective for failing to raise a state law objection or take an action based on state law because under state law the objection or action would have been meritless, repeats itself throughout the Superior Court's addressing Petitioner's claims of ineffectiveness.

### b. Ground Six - Failure to object to Branaugh's hearsay statements.

As to related Ground Six, Petitioner claimed his trial counsel was ineffective for failing to raise an objection to Branaugh's testimony as to what the victim said to Branaugh based on the claim that Branaugh's repeating at atrial of the victim's statements constituted hearsay.   The Superior Court found that Branaugh's testimony as to what the victim said to him did not

---

[1] In the alternative, the Superior Court also seemed to find that the failure of Petitioner's counsel to have cross examined Branaugh with the allegedly inconsistent statement, did not prejudice Petitioner in light of the overwhelming evidence of Petitioner's guilt of third degree murder. ECF No. 12-10 at 22 ("Moreover, we do not find that a cross-examination by trial counsel regarding discrepancies would have been outcome-determinative because the variances can be explained by the circumstances surrounding the report's preparation, and the recordings of the 911 calls, which we deemed properly admitted during Appellant's direct appeal, are cumulative to Branauigh's testimony.").   We note that the concurring and dissenting opinion disagreed with the majority and concluded that counsel was ineffective for failing to cross examine Branaugh with the prior inconsistent statement and that Petitioner also suffered prejudice as a result.  ECF No. 12-11 at 4 – 7.

constitute hearsay or came within the exceptions to hearsay, such as the "state of mind" or the excited utterance exception. ECF No. 12-10 at 17-20. Because the state courts found that Petitioner's claims of trial counsel's ineffectiveness depended upon establishing a meritorious claim under state law and that Petitioner failed to do so, then it follows that Petitioner failed to establish the performance prong of the <u>Strickland</u> test. This state law determination of no-merit-to-the-underlying-state-law claim is binding on this Court. Petitioner accordingly, cannot establish the ineffectiveness of his trial counsel based on failing to make meritless (under state law) hearsay objections.

### 2. Ground Two – Failing to object to testimony of Petitioner's Wife.

The same reasoning obtains for Petitioner's Ground Two. Petitioner claims trial counsel was ineffective for failing to object to his wife testifying at his trial based upon the Pennsylvania statutory spousal testimonial privilege. The Superior Court found that the wife's testimony did not come within the state law requirements for spousal testimonial privilege. ECF No. 12-10 at 24 - 28. Accordingly, Petitioner cannot establish deficient performance.

Alternatively, the Superior Court found that even if the spouse's testimony was improperly admitted, Petitioner failed to carry his burden to show prejudice because of the overwhelming evidence of his guilt. ECF No. 12-10 at 28 – 30.[2]

---

[2] It is not entirely clear to this Court whether the Superior Court concluded that Petitioner failed to establish prejudice or whether the assumed error in admitting the wife's testimony was concluded to be harmless error. The Superior Court uses both terms. <u>Compare</u> ECF No. 12-10 at 28 ("Moreover, Appellant's implication to his wife that he had done something wrong was merely cumulative of other trial evidence, such that the admission of Wife's testimony did not prejudice Appellant. Prejudice requires proof that 'but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.'") <u>with</u> <u>id</u>. at 30 ("Given the overwhelming evidence of Appellant's guilt, we conclude that even if Wife's testimony was inadmissible, the admission of her testimony at trial did not constitute harmful error entitling Appellant to a new trial."). If the Superior Court decided this issue on the basis of

(…footnote continued)

We find that Petitioner fails to carry his burden to show that either of these two conclusions by the Superior Court with respect the ineffectiveness claim based on the wife's testimony amounted to an unreasonable application of the United States Supreme Court precedent on ineffectiveness.[3]

### 3. Ground Three – Failure to impeach Dr. Rozin with prior testimony.

As to Ground Three, Petitioner claimed that his trial counsel was ineffective for not impeaching Dr. Rozin with his contradictory testimony at the coroner's inquest, namely, that the victim was not compromised before she was kicked out of the car. The Superior Court found as a fact that Petitioner's trial counsel did cross examine Dr. Rozin with Dr. Rozin's testimony from the coroner's inquest. ECF No. 12-10 at 42 (citing to the record). Our own examination of the record cited by the Superior Court confirms that Petitioner's trial counsel did in fact point out the inconsistencies with Dr. Rozin's trial testimony and his testimony at the coroner's inquest. Accordingly, this issue cannot afford Petitioner relief because the factual premise of his claim is not supported by the record.

---

lack of prejudice under Pierce, then our standard of review would be the deferential AEDPA standard. If, instead, the Superior Court determined that the admission of the testimony was harmless error, then we would apply the harmless error standard, which subsumes the AEDPA unreasonable application analysis. See, e.g., Fry v. Pliler, 551 U.S. 112, 120 (2007); Lee v. Smeal, 447 F. App'x 357, 360 (3d Cir. 2011) ("As to the harmlessness of any error, however, we are to 'perform our own harmless error analysis under Brecht'; we need not separately 'review the state court's harmless error analysis under the AEDPA standard.' Bond v. Beard, 539 F.3d 256, 275–76 (3d Cir. 2008) (citing Fry v. Pliler, 551 U.S. 112, 121 (2007))"). We find that the Superior Court's determination of no prejudice was not an unreasonable application of Strickland, to the extent that, in fact, the Superior Court found no prejudice. We find the admission of testimony of Petitioner's wife to be harmless error, to the extent that the Superior Court in fact found that the admission was harmless error.

[3] We note that the dissenting and concurring opinion disagreed as to this issue and concluded that the testimony of Petitioner's wife was inadmissible under the state statutory privilege and its admission was not harmless. ECF No. 12-11 at 7 – 11.

### 4. Ground Four – Failure to raise a weight of the evidence claim.

As to Ground Four, Petitioner claims his trial and appellate counsel were ineffective for failing to raise a weight of the evidence claim. The Superior Court found that appellate counsel was not ineffective for failing to raise the ineffective assistance of trial counsel for failing to raise a weight of the evidence argument because that weight of the evidence claim had been waived by not being raised during trial or in post sentence motions by trial counsel.  ECF No. 12-10 at 34-35.  The Superior Court in effect found a reasonable basis for not raising the claim of the verdict being against the weight of the evidence on direct appeal, namely, such a claim was waived and that the proper way to raise it is in a PCRA Petition, alleging ineffective assistance of trial counsel for waiving this claim.  The Superior Court then addressed the claim that trial counsel was ineffective for failing to raise a weight of the evidence claim.  The Superior Court found that because the PCRA trial court stated that it would not have granted relief on a weight of the evidence claim, i.e., such a weight of the evidence claim was meritless, trial counsel could not be ineffective for failing to raise his state law claim. ECF No. 12-10 at 35.  Given this state court ruling as to the merits of the state law claim of the verdict being against the weight of the evidence, Petitioner cannot establish herein the deficient performance prong of Strickland, *a fortiori*, he cannot establish that the Superior Court's disposition of these claims of ineffectiveness was contrary to or an unreasonable application of United States Supreme Court precedent.

### 5. Ground Five – Failure to object to telephone records.

As to Ground Five, Petitioner claims his trial counsel was ineffective for failing to object to telephone records introduced into evidence at trial since they were not accompanied by testimony from the custodian of those telephone records.  The Superior Court found that

Petitioner failed to carry his burden to show that the records were not authentic, i.e., that the custodian of the records could not have come to trial and validate them, and therefore, in the absence of showing that the records were in fact not authentic, plaintiff suffered no prejudice from their admission. ECF No. 12-10 at 43. Petitioner fails to show that this is an unreasonable application of <u>Strickland</u>. <u>Cf.</u> <u>United States v. Wheeler</u>, 800 F.2d 100, 106 (7th Cir. 1986) ("Whether the chain of custody has been established for a piece of evidence goes to its weight rather than its admissibility. A trial court's decision to admit real evidence will not be reversed unless it has abused its discretion. Significant here is that Wheeler does not allege that the gun is not the one taken from him or that it has been altered in any way. Without such an allegation Petro's testimony that the gun looks like the one he took from Wheeler and that he saw Farmer mark the gun is sufficient to show that the trial court did not abuse its discretion in admitting it. Absent any showing that but for the defense counsel's failure to object the gun would not have been admitted, the defendant has not shown the requisite prejudice.") (citations omitted), *overruled on other grounds by*, <u>United States v. Sblendorio</u>, 830 F.2d 1382 (7th Cir. 1987)). Accordingly because Petitioner fails to show that the Superior Court's disposition of this claim is contrary to or an unreasonable application of United States Court precedent, Ground Five cannot afford Petitioner relief in this federal habeas proceeding.

### 6. Ground Seven – Failure to challenge Pennybaker's testimony.

As to Ground Seven, Petitioner claims his direct appeal counsel and trial counsel were ineffective for failing to challenge the admission of the testimony from Robert Pennybaker, specifically, to object on the basis that Pennybaker's testimony concerned past "bad acts" of Petitioner, which is inadmissible under state evidentiary law. The Superior Court rejected this claim, finding that, as a matter of state evidentiary law, the testimony of Pennybaker was not

objectionable as prior bad acts testimony and, even though trial counsel objected to the testimony on the basis of relevance, Pennybaker's testimony was relevant.

As to direct appeal counsel's alleged ineffectiveness for failing to challenge the trial court's admission of the evidence, the Superior Court found, as a matter of state evidentiary law, that Petitioner failed to show that the trial court's admission of Pennybaker's testimony constituted an abuse of discretion and, therefore, direct appeal counsel could not be ineffective for failing to raise this mertiless issue. ECF No. 12-10 at 37- 38.

Petitioner has not established that the Superior Court's disposition of Ground Seven was an unreasonable application of the United States Supreme Court jurisprudence on ineffectiveness. Accordingly, Ground Seven does not afford Petitioner relief.

### 7. Ground Eight – Failure to object to Prosecutor's closing arguments.

As to Ground Eight, Petitioner complains that trial counsel was ineffective for failing to object to the prosecutor's closing statement in that the prosecutor asserted that the evidence supported a jury finding that Petitioner kicked the victim out of the car and ran over her arm as he drove away leaving her defenseless on the road. The Superior Court rejected this claim of ineffectiveness, finding that the closing argument of the prosecutor was fair comment on the evidence, i.e., the evidence supported such an interpretation of the events. ECF No. 12-10 at 32 – 33. The Superior Court found that because the prosecutor's arguments were fair comment on the evidence, the prosecutor's closing was unobjectionable and, therefore, trial counsel's failure to object was not deficient performance as there was no ground to object.

Petitioner fails to establish that the Superior Court's disposition of Ground Eight was an unreasonable application of the United States Supreme Court precedent on ineffective assistance

of counsel.  Accordingly, Ground Eight does not afford a basis for relief in these federal habeas proceedings.

### 8. Ground Nine – Failure to retain a defense forensics expert.

As to Ground Nine, Petitioner claims that his trial counsel was ineffective for failing to retain a forensics expert to counter Dr. Rozin's testimony, more specifically to counter the Commonwealth's evidence that Petitioner struck the victim with his car and that the victim was laying on the road when Caleffi subsequently struck her with his car.   The Superior Court addressed this claim, noting that Petitioner failed to show during his PCRA hearings that there existed any such expert who could testify as Petitioner asserts.  ECF No. 12-10 at 30 – 31. Fatal to Petitioner's burden to show ineffectiveness is his failure to establish the existence of any such expert testimony as the Superior Court found.  Id. at 31 ("Appellant has failed to identify any forensics expert who would have provided testimony to counter the Commonwealth's theory of the case."). This is an eminently reasonable application of United States Supreme Court precedent regarding ineffectiveness and the failure to call a particular witness. See Armstead v. Colleran, No. 02-CV-1216, 2003 WL 22436232, at *9 (E.D. Pa. Oct. 24, 2003)("To prove that counsel was ineffective for failing to call a witness, then, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner of a fair trial.") (citing in support Blasi v. Attorney General of the Commonwealth of Pennsylvania, 120 F.Supp.2d 451, 474 (M.D. Pa. 2000), aff'd, 275 F.3d 33 (3d Cir. 2001), cert. denied, 535 U.S. 987 (2002)); Fithian v. Shannon, No. CIV.A. 02-1861, 2002 WL 1636004, at *4 (E.D. Pa. July 23, 2002)(finding that the Superior Court's application of the test of ineffectiveness for

failure to call a witness, which was the very test used by the Pennsylvania Superior Court herein, was "neither contrary to nor an unreasonable application of federal law"). Accordingly, Ground Nine does not afford Petitioner relief in this federal habeas proceeding.

### 9. Ground Ten - Failure to object to the 911 tapes on authenticity grounds.

As to Ground Ten, Petitioner claims his trial counsel was ineffective for failing to object to the playing of the 911 audio tapes since John Jaso, a 911 supervisor for the 911 region, was not shown both tapes and never verified which one of the two tapes was the original. As Respondents point out, this precise claim was never raised before the state courts.[4] Accordingly, the claim is procedurally defaulted and Petitioner fails to establish cause and prejudice or a miscarriage of justice so as to excuse the procedural default of this claim. Moreover, even if the claim were not procedurally defaulted, Petitioner could not prevail without a showing that Jaso would not have been able to authenticate the tapes, which Petitioner does not even allege he could show.

### B. Ground Eleven – Error to admit 911 tapes due to being unintelligible.

In Ground Eleven, Petitioner asserts that the trial court erred in allowing into evidence and permitting the jury to hear the 911 tapes which were inaudible in large parts. Respondents point out that Ground Eleven was raised in the state courts as a state law issue as to the

---

[4] As Respondents point out Petitioner raised a related claim regarding the 911 tapes but not based on Jaso's failure to authenticate which of the two tapes used at trial was the original but based upon the lack of intelligibility of the tapes. See Petitioner's Appellate Brief on Direct Appeal, ECF No. 12-2 at 44 – 54. Specifically, Petitioner argued not that the tape lacked authentication but rather that Petitioner has "consistently disputed the accuracy and the completeness of the tape, maintaining that large portions are unintelligible and that the transcript does not correspond to what is heard on the tape. The 911 tape record was of such poor quality that it led to jury speculation as to its contents." Id. at 53. There is no mention in the appellate brief on direct appeal of the failure of Jaso to authenticate the 911 tapes. The claim that the tapes were unintelligible is addressed in Ground 11.

admissibility of the tapes and Petitioner did not raise any federal constitutional claim.   We agree.

Our review of Petitioner's Direct Appeal brief confirms that Petitioner raised this issue solely as

a state law evidentiary issue. ECF No. 12-2 at 44 – 54.  Petitioner cited state rules of evidence,

governing relevance and arguing that even relevant evidence may be excluded if its prejudicial

value outweighed its probative value and, due to the 911 tapes being unintelligible in large parts,

the tapes were more prejudicial than probative.  Id. at  53 ("Mr. Luster in the case at bar has

consistently disputed the accuracy and completeness of the tapes, maintaining that large portions

are unintelligible and that the transcript does not correspond to what is heard on the tape.  The

911 tape recording was of such poor quality that it led to jury speculation as to its contents.  The

probative value of the tape was therefore not outweighed by the tapes resulting prejudice to the

defendant.").  Because Petitioner raised this issue solely as a state law evidentiary issue in the

state courts and not as a federal constitutional issue, we find that any federal constitutional issue

regarding this claim was procedurally defaulted.  Duncan v. Henry, 513 U.S. 364, 365-66 (1995)

("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal

rights, they must surely be alerted to the fact that the prisoners are asserting claims under the

United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a

state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he

must say so, not only in federal court, but in state court."); Ross v. Petsock, 868 F.2d 639, 641

(3d Cir. 1989) ("It is not enough for the petitioner to show that he has presented the facts on

which the federal claim is based to the state court. Rather, the argument raised in the federal

court must be the substantial equivalent of that presented to the state courts.. Both the legal

theory and the facts supporting a federal claim must have been submitted to the state court. Thus,

the same method of analysis presented to the district court must have been made available to the

state courts."). Furthermore, a claim that trial counsel was ineffective for failing to raise a constitutional objection to this evidence would not be a "substantial claim" of ineffectiveness within the contemplation of  Martinez v. Ryan, 132 S.Ct. 1309 (2012) and Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013).  Accordingly, Ground Eleven does not provide a basis for relief in this federal habeas proceeding.

### C.  Ground Twelve – Evidence was insufficient as to causation.

In Ground Twelve, Petitioner claims that the evidence was insufficient to show that Petitioner's act caused the death of the victim and the unborn baby.

The Superior Court held that the test for insufficiency of the evidence is to "determine whether the evidence, and all reasonable inferences deducible therefrom viewed in the light most favorable to the Commonwealth as the verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt."  App'x at 3.[5]  As the United States Court of Appeal for the Third Circuit has declared:  "the test for insufficiency of the evidence is the same under both Pennsylvania and federal law.  Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992).  Hence, Petitioner cannot show that the Superior Court's disposition was contrary to United States Supreme Court precedent in the first sense, i.e., applying a wrong rule of law.  Nor does Petitioner carry his burden to show that the Superior

---

[5] We note that in their Answer, Respondents made an error attaching a copy of the Superior Court's April 17, 2006 slip opinion.  Respondents indicate that Exhibit 5, attached to the Answer, is the Superior Court's April 17, 2006 slip opinion.  ECF No. 12 at 2.  Exhibit 5 of the Answer is ECF No. 12-3 at 1 – 61.  However, in fact, Exhibit 5 is the Opinion of the Superior Court dated September 21, 2009, which reversed and remanded the PCRA Court's initial denial of the PCRA relief.  Consequently, we have photocopied the Superior Court's April 17, 2006 Opinion from the Original State Court record and attached it hereto as an appendix.   Citations to this April 17, 2006 Opinion shall be "App'x at __" with the page number being the page as originally paginated by the Superior Court.

Court's disposition of the insufficiency of the evidence claim was contrary to the United States Supreme Court precedent in the second sense, i.e., reaching a conclusion different from the conclusion reached by the United States Supreme Court in a case which has a set of materially indistinguishable facts.

Nor has Petitioner established that the Superior Court's disposition of the insufficiency of the evidence claim constituted an unreasonable application of United States Supreme Court precedents. The Superior Court found that "[s]o long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found." App'x at 5. Petitioner has not pointed to any United States Supreme Court precedent that would render either this rule of law or the conclusion that Petitioner's acts adequately caused the death of the victims unreasonable or contrary to Supreme Court jurisprudence. Indeed, we find the Superior Court's disposition neither contrary to or an unreasonable application of United States Supreme Court precedent. United States v. Guillette, 547 F.2d 743, 749 (2d Cir.1976) (stating that the defendant "is held responsible for all consequences proximately caused by his criminal conduct," even in the case where the defendant's acts "were not the immediate cause of a victim's death," and the death "results from intervening forces or events, such as negligent medical treatment"). We note that Petitioner's arguments in state court and here in federal court are that there was not sufficient evidence to establish that he caused the death of the victims; Petitioner did not argue that the finding sufficient evidence of causation in this case was violative of substantive due process.

## IV. CONCLUSION

For the reasons set forth herein, the Petition is denied. Because we conclude that jurists of reason would not find the foregoing disposition of Petitioner's claims debatable, a certificate of appealability is also denied.

BY THE COURT:

Date: February 14, 2017

s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    AARON LUSTER
        FW1125
        SCI Rockview
        Box A
        Bellefonte, PA 16823-0820

        All counsel of record via CM-ECF

# APPENDIX